IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NDK Crystal, Inc., )
)
Plaintiff, )
) Civil Action No.: 10 C 1824
v. )
) Suzanne B. Conlon, Judge
Nipponkoa Insurance Company, Limited (U.S. )
Branch), )
)
Defendant.

## MEMORANDUM OPINION AND ORDER

NDK Crystal, Inc. filed a declaratory judgment and breach of contract suit against Nipponkoa Insurance Company, Limited (U.S. Branch) alleging Nipponkoa breached its duty to pay NDK's losses under an insurance policy. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332. The parties move for summary judgment pursuant to Federal Rule of Civil Procedure 56, though NDK seeks only partial relief. For the reasons set forth below, Nipponkoa's summary judgment motion is granted, and NDK's cross-motion is moot.

## BACKGROUND

The following undisputed facts regarding the policy's limitations requirement are derived from the parties' Local Rule 56.1 statements. NDK operates a quartz manufacturing facility at 701 Crystal Parkway, Belvidere, Illinois. Pl. Resp. at ¶ 1.[1] NDK grows quartz crystals in eight

---

[1] Citation to a paragraph in either plaintiff's or defendant's response to the other's statement of material facts includes the asserted fact and the corresponding response to the extent they comply with Local Rule 56.1 and are otherwise admissible. Citation to a paragraph in defendant's answer to plaintiff's complaint ("Ans.") includes the corresponding asserted fact in plaintiff's complaint. "Pl. Resp." refers to plaintiff's response to Nipponkoa's statement of material facts; "Def. Resp." refers to defendant's response to NDK's statement of material facts; "Def. Supp. Resp." refers to defendant's response to NDK's supplemental statement of material facts.

large pressured vessels for use in crystal frequency control devices and optical applications. *Id.* at ¶ 3; Def. Resp. at ¶ 2. The process for growing crystals involves loading the vessels with a natural quartz called "Lasca," adding a caustic solution, sealing and closing the vessels, and raising the temperature inside the vessels to 570 to 750 degrees Fahrenheit and the pressure to approximately 29,000 lbs. per square inch. Pl. Resp. at ¶¶ 7-8; Def. Resp. at ¶ 22. After several months, the vessels are depressurized and opened, and the bars of synthetic quartz crystal are removed. Pl. Resp. at ¶ 9.

NDK purchased an all-risk insurance policy from Nipponkoa for damage to NDK's covered property during the period August 1, 2006 to August 1, 2007, subject to certain conditions and limitations. *Id.* at ¶ 10; Def. Resp. at ¶ 8, 12. The policy provides, "[Nipponkoa] will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss." Def. Resp. at ¶ 11. The parties agree the vessel lids constitute "Covered Property" under the policy. *Id.* at ¶ 14. Covered Causes of Loss means "risks of direct physical loss" subject to the policy's exclusions and limitations. *Id.* at ¶ 11.

On January 31, 2007, NDK discovered that pressurized, scalding hot, caustic solution was being expelled from the lid of vessel No. 6, spraying onto the facility's ceiling, walls and floor. *Id.* at ¶¶ 17, 23; Ans. at ¶ 13. As a result, NDK ceased operations. Ans. at ¶ 13. Cracks were found in the lids of vessel nos. 1, 4, 6 and 8, which the parties agree constituted "direct physical loss" under the policy. Def. Resp. ¶¶ 15-16, 18. On March 2, 2007, NDK gave Nipponkoa notice of the January 31, 2007 incident. Ans. at ¶ 28.

On March 30, 2007, Nipponkoa's adjuster sent a letter to NDK requesting documentation concerning its claim and seeking a date to conduct testing of the vessels. Pl. Resp. at ¶ 25. On

2

April 13, 2007, NDK's counsel responded to the March 30, 2007 letter. Def. Supp. Resp. at ¶ 3. Following fifteen months of investigation, on May 12, 2008, Nipponkoa issued a letter to NDK denying coverage under the policy due to policy exclusions. Pl. Resp. at ¶¶ 41-42. Nipponkoa also stated that January 31, 2009 was the deadline for filing suit under the policy, and that no tolling provision applied because NDK had not submitted a proof of loss to Nipponkoa. *Id.* at ¶¶ 42, 52. In a June 12, 2008 letter, counsel for NDK requested that Nipponkoa reconsider its coverage denial and provide to NDK any proof of loss form Nipponkoa deemed necessary under the policy. *Id.* at ¶¶ 45-47. In an August 1, 2008 email, NDK's counsel repeated its request for the proof of loss form. Def. Supp. Resp. at ¶ 12. Nipponkoa responded the same day that it would provide the forms, but did not do so. Def. Supp. Resp. at ¶¶ 14-15. By letter dated September 12, 2008, Nipponkoa advised NDK that it would not reconsider NDK's claim and stood by its denial of coverage. Pl. Resp. at ¶¶ 48-49. On February 26, 2010, NDK filed suit against Nipponkoa. In its summary judgment motion, Nipponkoa contends NDK's claims are untimely.

## ANALYSIS

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Nipponkoa bears the initial burden of showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). If satisfied, the burden shifts to NDK to establish a genuine issue of material fact. *Koclanakis v. Merrimack Mut. Fire Ins. Co.*, 899 F.2d 673, 675 (7th Cir. 1990) All facts and reasonable inferences are viewed in a light

3

most favorable to NDK. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). The parties agree Illinois law governs this dispute.

The policy's limitations period required NDK to bring suit within two years after the date when direct physical loss or damage occurs. Pl. Resp. at ¶ 12. Section 5/143.1 of the Illinois Insurance Code provides that, "[w]henever any policy or contract for insurance . . . contains a provision limiting the period within which the insured may bring suit, the running of such period is tolled from the date proof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part." 215 ILCS 5/143.1. Similarly, an endorsement added language to the policy extending the two-year limitations period "by the number of days between the date the proof of loss is filed with [Nipponkoa] and the date we deny the claim in whole or in part." Def. Supp. Resp. at ¶ 2. The policy required NDK to send Nipponkoa "a signed, sworn proof of loss containing the information we request to investigate the claim. . . within 60 days after our request. [Nipponkoa] will supply [NDK] with the necessary forms." Pl. Resp. at ¶ 14.

Under Illinois law, a limitations period runs from the date of loss, January 31, 2007. *Florsheim v. Travelers Indem. Co. of Illinois*, 393 N.E.2d 1223, 1232 (Ill. App. Ct. 1979). Nipponkoa asserts the two-year contractual limitations period expired on January 31, 2009, thirteen months before NDK filed its lawsuit. NDK contends its April 13, 2007 letter constituted the proof of loss required under the policy, thereby tolling the limitations period for 395 days until Nipponkoa issued its denial of coverage letter on May 12, 2008, and rendering NDK's filing on February 26, 2010 timely by four days.

The April 13, 2007 letter does not indicate it was a proof of loss, and NDK's subsequent actions show NDK did not believe it constituted proof of loss. By Nipponkoa's May 12, 2008 letter, NDK was on notice of Nipponkoa's position that January 31, 2009 was the deadline for filing suit. Pl. Resp. at ¶¶ 42, 52. NDK did not respond that the April 13, 2007 letter was a proof of loss. In his response on June 12, 2008, NDK's counsel requested the "appropriate 'proof of loss' form in order that NDK can submit its itemization of losses," and he reiterated the request in his August 1, 2008 email. Pl. Resp. at ¶ 47; Def. Supp. Resp. at ¶ 12.

Even if the April 13, 2007 letter constituted a proof of loss, the letter did not comply with the policy. *Koclanakis*, 899 F.2d at 675-76 (to toll a limitations period, a proof of loss must be in the form required by the policy).[2] NDK admitted the policy required that the proof of loss be sworn, and that the April 13, 2007 letter was not a sworn document. Def. Stmt at ¶¶ 32, 33 (citing Gary Santella Dep. Tr. at 151, lines 9-16). Despite these admissions, NDK argues a sworn proof of loss was only necessary if Nipponkoa requested one and sent the necessary forms. The policy did not require that Nipponkoa request a sworn proof of loss; the policy required NDK to file a signed, sworn proof of loss containing information Nipponkoa requested. *Vala v. Pacific Ins. Co., Ltd.*, 695 N.E.2d 581, 583 (Ill. App. Ct. 1998) ("[f]iling of other information with an insurance company does not start tolling the running of a policy's one-year limitations

---

[2] NDK contends a policy endorsement eliminated the requirement that the proof of loss be sworn, but not the requirements that the proof of loss be signed or contain the information Nipponkoa requested. The endorsement added language to the limitations provision regarding "the proof of loss." Def. Supp. Resp. at ¶ 2. The endorsement did not alter the proof of loss provision contained in the policy section entitled, "Duties in the Event of Loss or Damage." *Indiana Ins. Co. v. Pana Cmty. Unit School Dist. No. 8*, 314 F.3d 895, 902-03 (7th Cir. 2002) (court should not search for an ambiguity, but rather read entire insurance contract and give unambiguous words their ordinary meaning).

5

period if sworn proof of loss is required by the policy") (citing *Vole v. Atlanta Int'l Ins. Co.*, 526 N.E.2d 653, 655 (Ill. App. Ct. 1988), *appeal denied*, 530 N.E.2d 266 (Ill. 1988)).[3]

The April 13, 2007 letter also did not contain all information Nipponkoa requested in its March 30, 2007 letter. A limitations period may be tolled while the insurer investigates the claim "after it has received all the information from its insured." *Trinity Bible Baptist Church v. Federal Kemper Ins. Co.*, 578 N.E.2d 1375, 1378 (Ill. App. Ct. 1991) (insured may invoke Illinois tolling statute even though insurer did not request a proof of loss; remanded for determination whether information given to insurer complied with proof of loss provision). NDK produced responsive documents in January and June 2008. Pl. Resp. at ¶¶ 30 (citing Ex. G), 36-38. NDK's April 13, 2007 letter did not include all requested information; NDK provided only then-available information. Pl. Resp. at ¶ 29; Def. Supp. Resp. at ¶ 4.

Citing *McDonald v. American Family Mut. Ins. Co.*, 622 N.E.2d 63 (Ill. App. Ct. 1993), *appeal denied*, 633 N.E.2d 6 (Ill. 1994) and *Hines v. Allstate Ins. Co.*, 698 N.E.2d 1120 (Ill. App. Ct. 1998), NDK argues it was only required to submit a good faith proof of loss, and that its April 13, 2007 letter was sufficient. In *McDonald*, the insurer did not request a proof of loss before denying the claim. *Id.* at 64. The insureds submitted several estimates of storm damage to their home. *Id.* Because the estimates sufficiently apprised the insurer of the "character and extent of the claim" and the policy did not require a particular form, the court found Illinois' tolling statute applied. *Id.* at 64-65; *Hines*, 698 N.E.2d at 1124 (receipts for additional living

---

[3] NDK contends Nipponkoa failed to provide the necessary proof of loss form despite its repeated requests. NDK did not request a form until after Nipponkoa denied coverage. Pl. Resp. at ¶¶ 42, 46-47. Though Nipponkoa is precluded from arguing NDK failed to submit a particular document, the policy's requirement remains that the proof of loss be signed, sworn and contain all requested information.

expenses may constitute proof of loss where policy does not require a particular form). Unlike *McDonald,* the April 13, 2007 letter did not estimate NDK's claim. While stating NDK's claim arose from cracking in various vessels, the letter did not inform Nipponkoa of the nature of its present claim that an explosion caused the loss.

NDK does not contend Nipponkoa waived the time limit for filing suit under the policy. In its May 12, 2008 letter, Nipponkoa expressed that because NDK had not submitted a proof of loss, the two-year limitation had not been tolled, and the deadline for filing suit under the policy was January 31, 2009. Pl. Resp. at ¶¶ 42 (citing Ex. K), 52. NDK had eight months after Nipponkoa issued its coverage denial letter to file suit. *Koclanakis,* 899 F.2d at 676-77 (six-week period was sufficient); *Vala,* 695 N.E.2d at 584 (period between receipt of initial denial letter and subsequent reaffirmation of denial "does not constitute time that can be tolled"). Nipponkoa did not sit on NDK's claim so as to allow the limitation period to run and deprive NDK of the opportunity to litigate its claim. *Trinity Bible,* 578 N.E.2d at 1377-78. Because NDK did not file a proof of loss as required under the policy, and Nipponkoa did not waive the policy's two-year limit, NDK's suit against Nipponkoa was not timely filed.

## CONCLUSION

Despite construing the facts in NDK's favor, no genuine issue of material fact exists regarding NDK's failure to satisfy the policy's proof of loss requirement. Nipponkoa is entitled

to summary judgment as a matter of law because the two-year limitations period expired before NDK filed this case. The court does not reach the applicability of the policy exclusions advanced by Nipponkoa or any exceptions to those exclusions. Nipponkoa's motion for summary judgment is granted, and NDK's motion for partial summary judgment is moot.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

March 9, 2011